**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

BRIAN PAUL MEIK,

      Defendant-Appellant.

No. 97-4180
(D. Utah)
(D.Ct. No. 97-CR-130)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **McKAY, BRORBY**, and **MURPHY**, Circuit Judges.

_____

Following the district court's denial of his pretrial motion to suppress identification evidence obtained as a result of a photo array shown to two eyewitnesses to the robbery, Brian Meik was convicted by a jury of bank robbery. Mr. Meik appeals the denial of his motion to suppress, claiming the unnecessarily suggestive identification procedures used by law enforcement officers resulted in unreliable identification evidence that was admitted at trial in violation of his

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

rights to due process. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

On January 22, 1997, a branch of First Security Bank located in Magna, Utah, was robbed by a lone male. The robber entered through the front door, walking past the desk occupied by bank employee Cynthia Maestas, toward the teller cages. The robber approached teller Amy Caldwell, and gave her a note reading, "Give me your money I have a gun." After Ms. Caldwell complied, the robber moved to a second teller's window, presenting the same note. After the second teller complied, the robber turned and left the bank, again walking past Ms. Maestas who remained seated at her desk. As the robber fled, Ms. Caldwell announced the bank had been robbed.

Sheriff's Detective Brent Adamson responded to the robbery scene and interviewed witnesses, who generally described the robber as Hispanic or white, dark hair, approximately 5'9" tall, weighing approximately 150 pounds, and wearing a cowboy hat and a long coat. The robber eluded the ensuing search, and no suspect was immediately identified.

In March 1997, Emily Buonocore contacted the authorities. She told

Detective Adamson that Brian Meik had told her he had robbed the bank. Based on this information, Detective Adamson obtained a jail photograph of Mr. Meik, comparing it to the descriptions of the robber given by witnesses. The photograph appeared to match the descriptions in particulars such as height, weight, and hair color. Detective Adamson then generated a "photo spread" consisting of Mr. Meik's photograph and five photographs of individuals matching his general physical description.[1]

On March 28, 1997, Detective Adamson took the photo array containing Mr. Meik's photograph to the bank, where he showed it to Ms. Caldwell and Ms. Maestas. Each witness reviewed the photo array independently, and each identified Mr. Meik's photograph as that of the robber. Ms. Caldwell stated he was "definitely" the robber. Ms. Maestas was "pretty sure" Mr. Meik was the robber. Mr. Meik was subsequently indicted.

After his arrest, Mr. Meik moved to suppress the identifications made based

---

[1] "Photo spreads" are computer-generated photo arrays. When an individual is booked into the Salt Lake County Jail, a photograph and physical description are entered into a computer data base. When parameters such as height, weight, sex, race, eye color, and hair color, are entered, the computer can generate a photo array of up to six individuals who match the physical description provided.

on the photo array used by Detective Adamson, and the potential in-court identifications. Following a hearing, his motion was denied.

At trial, both Ms. Caldwell and Ms. Maestas identified Mr. Meik as the robber. Ms. Buonocore testified as to the inculpatory statements Mr. Meik made to her. The government presented evidence that Mr. Meik lived less than one mile from the bank, and had a "window of opportunity" during which no one could account for his whereabouts. The government also presented evidence Mr. Meik, who was unemployed at the time of the robbery, became uncharacteristically generous with money and gifts after the robbery. Mr. Meik raised an alibi defense. A jury convicted Mr. Meik of bank robbery.

On appeal, Mr. Meik contends the photo array utilized by Detective Adamson was unnecessarily suggestive, resulting in unreliable identifications used in violation of his due process rights. In reviewing a due process challenge to the use of a photo array, we review the district court's underlying factual findings under the clearly erroneous standard, and the ultimate constitutional question *de novo*. *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir.), *cert. denied*, 513 U.S. 1007 (1994). We employ a two-step due process inquiry, first determining "whether the photo array was impermissibly suggestive." *Id*. at 1261-

-4-

62 (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)). If the photo array was impermissibly suggestive, "then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *Id*.

In assessing whether a photo array was unnecessarily suggestive, we typically examine three factors: the size of the array, the manner of presentation, and the details of the photographs in the array. *See id.* In this instance, the photo array consisted of six photographs displayed on a single sheet.[2] Mr. Meik does not challenge directly either the number of photographs contained in the photo array, or the manner of presentation. However, he does claim an array composed of a such a small number of photographs, presented simultaneously, must be closely scrutinized for suggestive irregularities. We agree. This court has held that a photo array comprised of six photographs is constitutionally permissible but is "a number sufficiently small to weigh heavily in the balance of factors to be considered" in determining whether suggestive irregularities are present. *Id*. at 1262-63 ("The lower the number of photographs used by officers in a photo array,

---

[2] In this case, the photo array consisted of six photographs depicting five individuals. One individual, not Mr. Meik, appeared in two booking photographs taken on different dates. We have examined the photo array and are unable to positively determine which of the photographs featured the same individual.

the closer the array must be scrutinized for suggestive irregularities.").

Mr. Meik contends several details of the photographs comprising the array constitute suggestive irregularities. He claims four of the other persons depicted have darker complexions, darker hair, and darker eyes, and the fifth has noticeably protruding ears. He also claims his photograph is distinguishable from the others because of the "unusual or tense expression on his face."

The court has scrutinized the photo array for similarities and differences in each of the photographs, bearing in mind the overall size of the array and the manner of presentation. The purported differences emphasized by Mr. Meik are not readily discerned, if at all. Given the similarities among the photographs, there are no differences in Mr. Meik's photograph that would draw a witness' eye to his picture, or make it stand out from the others in any way. Therefore, we conclude the photo array is not unconstitutionally suggestive.

Having determined the photo array was not impermissibly suggestive, we have no occasion to proceed to the second step of the due-process analysis. Accordingly, the judgment of the district court is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge